## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Chase D. C,                                    Case No. 20-cv-1292 (ADM/TNL)

        Plaintiff,

v.                                             **REPORT & RECOMMENDATION**

Kilolo Kijakazi, Acting Commissioner of
Social Security,[1]

        Defendant.

James H. Greeman, Greeman Toomey, 250 Marquette Avenue, Suite 1380, Minneapolis, MN 55401 (for Plaintiff); and

Michael Moss, Social Security Administration, Office of the General Counsel, 1301 Young Street, Mailroom 104, Dallas, TX 75202 (for Defendant).

## I.  INTRODUCTION

Plaintiff Chase D. C. brings the present case, contesting Defendant Commissioner of Social Security's denial of his applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income ("SSI") under Title XVI of the same, 42 U.S.C. § 1381 *et seq.* This matter is before the undersigned United States Magistrate Judge on cross motions for summary judgment, Plaintiff's Motion for Summary Judgment (ECF No. 20) and the Commissioner's Motion for Summary Judgment (ECF No. 22). These motions have been referred to the

---

[1] The Court has substituted Acting Commissioner Kilolo Kijakazi for Andrew Saul. A public officer's "successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d).

undersigned for a report and recommendation to the district court, the Honorable Ann D. Montgomery, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

Based upon the record, memoranda, and proceedings herein, the Court recommends that Plaintiff's motion be **GRANTED IN PART** and **DENIED IN PART**; the Commissioner's motion be **GRANTED IN PART** and **DENIED IN PART**; and this matter be **REMANDED** for further proceedings.

## II. BACKGROUND

### A. Procedural History

On April 13, 2017, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of November 1, 2014. (Tr. 289-94; 294-96, ECF No. 19.) Plaintiff alleged the following impairments: traumatic brain injury, depression, anxiety, acute allergies, herniated disks, a possible compression fracture, and an anterior cruciate ligament (ACL) replacement in his left knee. (Tr. 328.) Plaintiff asserts that while he was previously able to perform his work duties "very well," including using heavy equipment, work has become challenging due to short-term memory loss.[2] (Tr. 315; *see also* Tr. 356 ("My memory loss has made it impossible to perform work skills that I used to have.").) Plaintiff contends that he has experienced a loss in muscle memory to perform "even simple tasks;" he has forgotten things "that were once second-nature;" and his short-term memory loss is "so

---

[2] Plaintiff worked in public works for the City of Wyoming from January 2001-November 2014. (Tr. 339.) He also did snow plowing for another company from December 2016 – January 2017. (Tr. 339.) He has further past experience as a seasonal farm hand, tow truck operator, laborer, maintenance worker, and equipment operator. (Tr. 348.)

severe that [he is] unable to learn new skills." Coupled with his severe depression and anxiety, as well as pain in his lower back, Plaintiff asserts he is unable to work. (Tr. 356.)

Plaintiff also maintains that he has trouble remembering things, like to dress warm if it is cold outside, simple bathing practices, eating, and paying bills. (Tr. 357-63.) He can remember to take his medicine and do house and yard work if he sets an alarm and puts it on his calendar. (*Id.*) He also has trouble sleeping, socializing, concentrating, completing tasks, and remembering instructions. (*Id.*) Plaintiff, however, also reports being able to drive; do yard work such as mowing the grass and housework such as laundry or vacuuming; attend at least two doctors' appointments per week; and attend AA/NA meetings and church. (*Id.*)

Plaintiff was found not disabled on June 23, 2017. (Tr. 224-28.) That finding was affirmed upon reconsideration. (Tr. 231-33, 235-37.) Plaintiff then appealed the reconsideration of his DIB and SSI determinations by requesting a hearing before an administrative law judge ("ALJ"). (Tr. 238-39.) A hearing was held on April 4, 2019. (Tr. 117-152.)

Plaintiff sought a supplemental hearing, arguing that the "truncated" nature of the hearing prevented him from "fully and materially presenting his claim." (Tr. 415.) This request was denied by the ALJ because Plaintiff's counsel did not address specific grounds for a supplemental hearing. (Tr. 286.) Plaintiff's counsel renewed his request, indicating he intended to take further testimony from Plaintiff and the Vocational Expert ("VE") on the topics of concentration, persistence, and pace. (Tr. 417-18.) This request was also denied. (Tr. 16.)

On May 9, 2019, the ALJ issued an unfavorable decision denying Plaintiff's claim for benefits. (Tr. 12-31.) Plaintiff sought review of the ALJ's decision through the Appeals Council, which denied his request for review. (Tr. 1-6.)

Plaintiff then filed the instant action, challenging the ALJ's decision. (Compl., ECF No. 1.) The parties have filed cross-motions for summary judgment. (ECF Nos. 20, 22.) This matter is now fully briefed and ready for a determination on the papers.

### B. Hearing Before the ALJ

Plaintiff testified at the hearing, first detailing his memory problems. (Tr. 128-33.) He detailed his treatment with his neurologist, Kenneth Hoj, MD. (Tr. 128-30.) He testified that because of his memory problems, it was hard for him to learn information. (Tr. 129.) By way of example, Plaintiff shared that he was no longer able to remember measurements or the directions for snow plowing certain areas that he had once been able to do when he worked for the City of Wyoming. (Tr. 131-32.) He also testified that he had problems with concentration and attention. (Tr. 133.) These problems with his memory, concentration, and attention caused him to be disciplined by his employers. (*See* Tr. 135.) He also testified that he would now get lost in Wyoming, his hometown, and forget where he is going or where he is. (Tr. 136-37.)

When asked if he would have been able to drive himself to his hearing in downtown Minneapolis through the use of MapQuest or verbal directions on his smartphone, Plaintiff testified he may suffer from a "sensory overload" and would be unable to make his way to the hearing. (Tr. 139.) When asked by the ALJ how many head injuries he had suffered from 2014-2018, Plaintiff responded that he did not know if he could tell how many he

had, but "it would have been probably fewer and further between." (Tr. 141.) He stated

he had been in a "not serious" car accident where he received a concussion; however, he

could not recall if the car accident was within the timeframe posed by the ALJ. (Tr. 141.)

The ALJ also asked Plaintiff about his previous work in the summer of 2018, where

Plaintiff was installing acoustic tiles. (Tr. 141-42; *see also* Tr. 1023.) Plaintiff testified

that he worked between 10 and 20 hours per week and he and his employer mutually parted

ways, but also that the employer did not find Plaintiff was meeting their standards and

expectations. (Tr. 142.)

During the VE's testimony, the ALJ posed the following hypothetical:

> I'd like you to assume an individual can occasionally exert 50 pounds of force, and 25 pounds frequently. He could stand and walk about six hours out of eight, and sit about six hours out of eight.
>
> This individual can frequently climb ramps or stairs, and occasionally climb ladders, ropes or scaffolds. They could perform occasional balancing, frequent stooping, occasional kneeling, crouching, crawling.
>
> This individual would be limited to simple, routine, repetitive tasks that can be learned with a short demonstration or very short written or verbal description. The individual may have very few changes to his assignments and the location of his assignments.
>
> He may have brief and superficial contact with others such as taking instructions – very simple information, and simple coordination such as team – or transferring materials.

(Tr. 143-44.) The VE testified that the hypothetical individual would not be able to perform

Plaintiff's past work, but that there were three examples consistent with the Dictionary of

Occupational Titles ("DOT") that such a person could perform. (Tr. 144-46.) He testified

that the representative jobs of hand packager (DOT code 920.587-018; approximately 100,000 jobs in the national economy), product assembler (DOT code 706.687-010; approximately 200,000 jobs in the national economy), and electronics worker (DOT code 726.687-010; approximately 100,000 jobs in the national economy)  would be available to such a person.  (Tr. 145.)  The VE testified that all three examples he provided have a specific vocational preparation ("SVP")  of 2 and are unskilled work.  (Tr. 145.)  The VE further noted that the three jobs "are done at a stationary work area, not on an assembly line." (Tr. 145.)  The VE stated his testimony was consistent with the DOT.  (Tr. 145.)

The following questioning then took place between the ALJ and the VE:

> ALJ: And I've provided a limitation regarding routine, repetitive tasks and few changes to the assignments.  So looking at a job like the electronics worker, [] generally the person would be working on the same components day in and day out, or would there be changes between different product lines?
>
> VE: Typically they would be performing the same work process, although  there might be some changes from time to time, yes . . . . But those changes would still be unskilled and could be learned by a demonstration.  And typically the changes wouldn't occur on a daily basis.
>
> ALJ: Okay.  The changes in product line, or changes to the tasks would occur less than daily is that what you indicated?
>
> VE: Yes.
>
> ALJ: And what about product assembler and hand packaging, would that be comparable where the individual would be performing the same task essentially for the entire day?
>
> VE: Yes.

> ALJ: And would there be changes in those tasks – products being packaged, or the products being assembled?
>
> VE: Typically not products packaged. And there could be an occasional change for product assembly . . . . And certainly as my testimony was with the electronics job, yeah, the changes wouldn't occur on a daily basis.

(Tr. 145-46.)

On cross-examination, the VE testified that a person who had to be told repeatedly how to complete a task they had previously been doing with some regularity could result in escalating discipline including verbal instruction, written direction, a meeting with the employer and/or human resources, and perhaps termination. (Tr. 150.)

### C. ALJ Decision

The ALJ found that Plaintiff had severe impairments of history of bilateral ACL repair, degenerative disc disease of the lumbar spine, history of traumatic brain injury with chronic traumatic encephalopathy (CTE), depression, anxiety, and opiate dependance. (Tr. 19.) The ALJ further concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 19-22.) The ALJ considered Listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine). (Tr. 19-20.)

The ALJ also considered the severity of Plaintiff's mental impairments and concluded that when considering them singly and in combination, the impairments did not meet or medically equal the criteria of listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders) because they did not meet the required severity level under the "paragraph B" criteria of either listing and the

"paragraph C" criteria were also not met. (Tr. 20-21.) In order to meet the listing under 12.04 or 12.06, the mental disorder must satisfy the requirements of both paragraphs A and B or the requirements of both paragraphs A and C. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2). Paragraph A of those listings includes the medical criteria that must be present in the medical evidence; Paragraph B provides functional criteria the Commissioner assesses to evaluate how a mental disorder limits a person's functioning; and paragraph C of these listings provides criteria used to evaluate whether a mental disorder is "serious and persistent." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(a)-(c).

As discussed in detail by the ALJ in his findings (*see* Tr. 20-21), when evaluating whether a mental impairment is comparable to a listed impairment, the ALJ must consider criteria under paragraph B of the Appendix of the Social Security Administration regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b). A person satisfies the paragraph B criteria by showing an extreme limitation of one or a marked limitation of two of the following four areas of mental functioning: (1) the ability to understand, remember, or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the ability to adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(E)(1)-(4), 12.00(F)(1). The term "extreme" means an inability to function in the relevant area; the term "marked" means a serious limitation; and the term "moderate" means a fair ability to perform the identified function. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c)-(e). Here, the ALJ found Plaintiff had moderate limitation in his ability to understand, remember, or apply information; a moderate

8

limitation in his ability to interact with others; a moderate limitation in his ability to concentrate, persist, or maintain pace; and a mild limitation in his ability to adapt or manage himself. (Tr. 20-21.) The ALJ also considered whether any "paragraph C" criteria were satisfied and found that the evidence failed to establish the presence of paragraph C criteria. (Tr. 21.)

Following this, the ALJ found Plaintiff to have the residual functioning capacity ("RFC") to perform medium work

> except frequent climbing of ramps and stairs; occasional climbing of ladders, ropes, or scaffolds; occasional balancing, kneeling, crouching and crawling; frequent stooping; limited to simple, routine, repetitive tasks that can be learned with a short demonstration or a very short written or verbal description; The individual may have very few changes to his assignments or the location of his assignments; He may have brief and superficial contact with others, such as taking instructions, relaying very simple information, and simple coordination such as team lifting or transferring materials.

(Tr. 22.) The ALJ then concluded Plaintiff was unable to perform any past relevant work; that he was defined as a younger individual on the alleged disability onset date; and that he had at least a high school education and was able to communicate in English. (Tr. 29.) The ALJ then found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 29.) In particular, the ALJ determined that Plaintiff could work as a hand packager, product assembler, or electronics worker. (Tr. 30.) Accordingly, the ALJ found that Plaintiff was not disabled as of November 1, 2014. (Tr. 30.)

### III.   STANDARD OF REVIEW

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted); *see Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) ("Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision.").

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher*, 652 F.3d at 863. The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Id.*; *accord Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted). Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676.

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. §§ 423(a)(1), 1381a; *accord* 20 C.F.R. §§ 404.315, 416.901. An individual is considered to be disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do his previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); *accord* 42 U.S.C. § 1382c(a)(3)(B); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).

Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) []he was severely impaired; (3) h[is] impairment was, or was comparable to, a listed impairment; (4) []he could perform past relevant work; and if not, (5) whether []he could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. §§ 404.1512(a), 416.912(a). The burden of production, however, "shifts to the Commissioner at step five to show the claimant is capable of performing other work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)); *see Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").

## IV.  DISCUSSION

Plaintiff argues that (1) he was denied a full and fair hearing before the ALJ; (2) the hypothetical provided to the VE (and ultimately determined to be the RFC) did not consider all restrictions opined by a particular medical provider; and (3) the ALJ erred in relying on the VE's testimony because it conflicted with the DOT and exceeded the hypothetical and Plaintiff's RFC as determined by the ALJ.

### A.  Full and Fair Hearing

Plaintiff first argues that he was denied a full and fair hearing in violation of the Social Security Act and his due process rights under the Fifth Amendment.  (Pl.'s Mem. in Supp. at 14-20, ECF No. 21.)  He specifically states that the "seemingly arbitrary" hearing time limit set forth by the ALJ denied him the opportunity to fully and fairly develop the record; that his counsel was forced to limit his direct examination of him and cross-examination of the VE; and that he was improperly denied a supplemental hearing.  (*Id.*)

At the outset of the hearing, the ALJ noted that it would last approximately 30-40 minutes.  (Tr. 120.)  He then stated to Plaintiff, "[i]f it's necessary for a supplemental proceeding, your representative can make that request, to have us reconvene at a later time in order to take more testimony."  (Tr. 120-21.)  Plaintiff's counsel had multiple hearings before the ALJ that day.  (*See* Tr. 121; *see also* Tr. 16 ("the claimant's representative . . . was scheduled to appear for four of the seven hearings scheduled by the undersigned on April 4, 2019).)  When counsel questioned further about the time limit, the ALJ noted that the time limit was in place "in order not to infringe upon the next claimant's time."  (Tr. 121.)  He again noted that counsel could request a supplemental hearing where counsel

would need to "articulate the items of inquiry that you had intend[ed] to go into, and what could not be accomplished in the time we had today." (Tr. 122.) Counsel continued to argue that placing a time limit on the hearing infringed upon Plaintiff's due process rights. (Tr. 122-23.)

Nevertheless, Plaintiff's counsel gave an opening statement. (Tr. 123-27.) Plaintiff gave direct testimony. (Tr. 128-42.) Plaintiff's counsel cross-examined the VE. (Tr. 146-50.) While cross examining the VE, Plaintiff's counsel noted the time and asked how much time remained. (Tr. 150.) The ALJ then said they were out of time and reminded Plaintiff's counsel that he could request a supplemental hearing to develop further lines of inquiry with the VE or with Plaintiff. (Tr. 150-51.) The ALJ also stated that counsel could submit a written closing statement or submit a written request to supplement the hearing with a closing statement. (Tr. 151-52.)

"[S]ocial [S]ecurity hearings are non-adversarial." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). While Plaintiff bears the burden of proof of establishing his disability, the ALJ has a duty to develop the record fully and fairly. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). However, remand for further development of the record is only required where a claimant is prejudiced or treated unfairly by the ALJ's development of the record. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). Plaintiff "bears the burden to establish he was prejudiced or treated unfairly by the ALJ's failure to develop the record." *Snyder v. Saul*, No. 19-cv-134-LRR, 2021 WL 537207, at *9 (N.D. Iowa Jan. 27, 2021) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006)), *report and recommendation adopted*, 2021 WL 521308 (N.D. Iowa Feb. 11, 2021).

An ALJ does not, however, "fail in his duty to develop the record if substantial evidence exists to allow [him] to make an informed decision." *Hey v. Colvin*, 136 F. Supp. 3d 1021, 1046 (D. Minn. 2015) (citing *Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001)). "A plaintiff seeking to reverse an ALJ's decision due to the failure to adequately develop the record bears a heavy burden: a plaintiff must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Id.*; *see Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995); *see also Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 517 n.3 (8th Cir. 2019); *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008); *accord Smith v. Astrue*, 232 F. App'x 617, 619 (8th Cir. 2007).

Further, while it is something courts consider, the length of a hearing is not dispositive of the issue of whether or not the ALJ fully and fairly developed the record. *See Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994). "Where 'the ALJ's determination is based on all the evidence in the record, including the medical records, observations of treating physicians and others, and an individuals' own description of his limitations,' the claimant has received a 'full and fair hearing.'" *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (quoting *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010)). And, "where a claimant is represented by counsel, the ALJ 'should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored.'" *Axtell v. Colvin*, No. 14-cv-3809 (JSM), 2015 WL

12781187, at *18 (D. Minn. Apr. 30, 2015) (quoting *Duncan v. Astrue*, Civ. No. 08-2144, 2009 WL 1254737, at *5 (D. Kan. May 5, 2009) (in turn citing *Hawkins v. Charter*, 113 F.3d 1162, 1168 (10th Cir. 1997)).

In *Battles*, the hearing lasted approximately ten minutes, and was fully transcribed in approximately eleven pages. 36 F.3d at 45. In addition, the claimant's counsel's questions failed to shed light on his mental capacity to work, and the ALJ asked no questions on that topic. *Id.* Finding that the ALJ had "failed to fairly and fully develop the record," the Eighth Circuit reversed the judgment of the district court and remanded the case with instructions to remand to the Commissioner for further proceedings. *Id.* at 45-46.

In contrast, the hearing in this case began at 10:35 a.m. and ended at 11:13 a.m., totaling 38 minutes. (Tr. 119, 152.) The official transcript is 37 pages long, with approximately 32 pages dedicated to questioning and argument. (*See* Tr. 116-152.) The ALJ asked questions of Plaintiff. (Tr. 141-42.) Plaintiff was asked a number of questions and provided testimony about his mental capacity to work. (Tr. 128-42.)

In addition, the ALJ informed Plaintiff's counsel at the conclusion of the hearing that he could request a supplemental hearing if there were any further lines of inquiry he wished to address with the VE or Plaintiff, and that he could also submit a closing statement to the ALJ in writing. (Tr. 151-52.) The ALJ also considered counsel's request for a supplemental hearing—twice. (*See* Tr. 286, 415-17.) The fact that this request was ultimately denied does not, however, establish that Plaintiff was prejudiced or treated unfairly by the ALJ. The ALJ noted in his decision that when he gave Plaintiff's counsel

additional time to request a supplemental hearing, he "instructed [counsel] to proffer any new expected testimony and provide a comparison to the existing testimony." (Tr. 16.) The ALJ clearly stated his reasoning why he declined to schedule a supplemental hearing, including that the additional testimony proposed by Plaintiff in his request for a supplemental hearing was repetitive and cumulative. (Tr. 15-16.) The ALJ specifically wrote in part:

> By letter . . . [counsel] requested a supplemental hearing, indicating his intention to take further testimony from the claimant and the vocational expert on the general topic of concentration, persistence, and pace. Testimony on this broad topic was already obtained during the hearing when claimant testified to having problems with concentration and paying attention. Claimant further testified to suffering from sensory overload that limits his ability to perform tasks (such as driving while receiving instructions from a GPS devise). Claimant further testified to missing work due to experiencing migraines and ending a part-time job because he was not meeting standards. The evidence was also replete with references to memory limitations that might also be expected to interfere with concentration. The written request does not provide a proffer of the intended new testimony or compare it to the testimony already taken, but speaks only in broad terms of questioning about concentration, persistence, and pace.

(Tr. 16.) Finding counsel's lack of a specific proffer in his request without cause, the ALJ declined to schedule a supplemental hearing. (Tr. 16.)

In sum, Plaintiff has not shown that the length of his hearing, nor the denial of his request for a supplemental hearing, demonstrate he was prejudiced or treated unfairly by the ALJs development of the record. *See Onstad*, 999 F.2d at 1234. The record shows that Plaintiff received a full and fair hearing as required by law. *See Jones*, 619 F.3d at 969.

**B.  Limitations in the Hypothetical Question and RFC**

Plaintiff next challenges that the hypothetical provided by the ALJ at the hearing, and ultimately applied as the RFC in his decision, did "not consider all applicable restrictions."  (Pl.'s Mem. in Supp. at 21.)  Namely, Plaintiff argues that the RFC determined by the ALJ, as well as the hypothetical question posed to the VE, did not accommodate all the limitations set forth in the opinion of Deborah D. Roman, LP, which the ALJ found persuasive.  (*Id.* at 21-22.)  After consideration of Dr. Roman's opinion, the other opinions on which the ALJ relied, and the record as a whole, in addition to careful review of the RFC, the Court disagrees.

Plaintiff was referred to Dr. Roman for formal neuropsychological testing by neurologist Kenneth Hoj, MD.  (Tr. 649; 846.)  Dr. Roman's only contact with Plaintiff was her neuropsychological evaluation of Plaintiff on November 16, 2016.  (Tr.  845-51.)  After the evaluation, Dr. Roman noted that certain test findings were "abnormal," writing in her report these findings

> reflect[] slow information processing speeds, particularly on tasks requiring vertical or horizontal visual scanning, and poor memory.  Specifically, his ability to learn and retain new information of either a verbal or figural sort is moderately to severely impaired overall, consistent with his self-reports. Other cognitive abilities are well preserved . . . . He is mildly slow and inaccurate on subtests requiring divided attention. The MMPI-2, a self-report personality measure, suggests severe depression and anxiety associated with low energy, poor self-confidence, somatic malfunctioning and cognitive efficiencies.  He feels overwhelmed and ill-equipped to manage his difficulties.

(Tr. 849.) She opined that Plaintiff was experiencing "significant memory impairment, implying bilateral mesial temporal brain disease, very likely occurring as a cumulative late effect of multiple head traumas." (Tr. 849.) She further opined that his mild cognitive and psychomotor slowing could be occurring on that basis, or due to side-effects from his medication and depression. (Tr. 849.) She wrote that his problems were compounded by his "severe, refractory depression, which can take a toll on energy, motivation, and cognitive abilities." (Tr. 849.) She noted that she had not reviewed his outside psychiatric records, and thus "must defer to those providers in determining if he's disabled on that basis," but opined that "certainly the very poor memory would make it difficult for him to find an employment niche, as his ability to learn and retain new information, including instructions and procedural skills, is greatly compromised." (Tr. 849.)

She recommended Plaintiff participate in vocational rehabilitation "to see if a niche could be found for him somewhere in the workforce." She also recommended that Plaintiff "would be best suited for repetitive type jobs (e.g. factory work) or those that do not require ever changing directives or new learning." (Tr. 849.)

The ALJ found Dr. Roman's opinion "to have been largely persuasive and consistent with the [RFC]. This opinion was supported by thorough WAIS-IV testing reflecting impaired to average scores as well as her objective observations and background information given." (Tr. 28-29.)

When the ALJ posed his hypothetical at the hearing, he asked the VE to consider a person with the following mental limitations:

> This individual would be limited to simple, routine, repetitive tasks that can be learned with a short demonstration or very short written or verbal description. The individual may have very few changes to his assignments and the location of his assignments.
>
> He may have brief and superficial contact with others such as taking instructions – very simple information, and simple coordination such as team – or transferring materials.

(Tr. 144.) The RFC determination made by the ALJ adopted this hypothetical. (Tr. 22.)

Plaintiff argues that this hypothetical and RFC did not consider all applicable restrictions opined by Dr. Roman, namely that Plaintiff: (1) is "moderately to severely impaired" in his ability to learn and retain verbal or figural information; (2) has a greatly compromised ability to learn and retain new information, including instructions and procedural skills; and (3) would be best suited for jobs that do not require ever changing directives and new learning. (Pl.'s Mem. in Supp. at 21-22.) He argues that the hypothetical proffered by the ALJ improperly notes an ability to learn tasks that can be conveyed with a short demonstration or very short written or verbal description. (Pl.'s Mem. in Supp. at 22.) He further argues that the ALJ limited the hypothetical individual to assignments and locations that could have very few changes when Dr. Roman opined that he could not handle any changes in his job directives. (*Id.*) He also argued that the hypothetical did not address any demonstrated difficulties with his hand-eye coordination. (*Id.*)

The RFC is defined as the most a claimant can do despite his or her limitations, including both physical and mental limitations. 20 C.F.R. §§ 404.1545; 416.945. The Commissioner's determination of a claimant's RFC must be "based on all of the relevant

evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). "Ultimately, the RFC determination is a medical question[] that must be supported by some medical evidence of [the claimant's] ability to function in the workplace." *Noerper v. Saul*, 964 F.3d 738, 744  (8th Cir. 2020) (quotation omitted); *see, e.g.*, *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017).  "[I]t is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

Likewise, "[a] hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996).  Assuming the hypothetical question meets this standard, testimony from a vocational expert constitutes substantial evidence.  *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001).

Because the ALJ considered Dr. Roman's opinion in conjunction with the entirety of the record, the ALJ was not obligated to adopt every limitation suggested by Dr. Roman when posing the hypothetical to the VE.  There is no indication on the record that the ALJ afforded Dr. Roman's evaluation controlling, significant, or any other heightened evidentiary weight which would require the ALJ to consider only her opinion when asking the hypothetical or determining the RFC.  *See Jacob P. v. Saul*, No. 19-cv-3078 (KMM), 2021 WL 352416, at *4 (D. Minn. Feb. 2, 2021) ("[T]he Court is unaware of any case that has elevated an opinion described as 'persuasive' and 'consistent with the record' to functionally controlling edict."); *cf. Galloway v. Kijakazi*, No. 20-CV-00059-CJW, 2021

WL 5278545, at *24 (N.D. Iowa Sept. 2, 2021) ("[t]he ALJ only assigned some weight to [the provider's] opinion insofar as the opinion is consistent with the record as a whole, and therefore, the ALJ was not required to include all [of the provider's] limitations in the hypothetical."), *report and recommendation adopted*, 2021 WL 4399719 (N.D. Iowa Sept. 27, 2021), *appeal filed*, No. 21-3691 (8th Cir. Nov. 22, 2021).

In this case, the ALJ made the RFC determination "[a]fter careful consideration of the entire record." (TR. 22.) When considering the medical opinion evidence, he detailed that he found the opinions of the State Agency medical and psychological consultants "generally persuasive," but found certain exceptions and reduced Plaintiff's RFC accordingly.[3] (Tr. 28.)

And, as stated above, the ALJ found the opinion of Dr. Roman "largely persuasive." (Tr. 28.) He then found the opinion statement of Dr. Hoj only "partly persuasive" in some respects but "less persuasive" in others. (Tr. 28.) These opinions were considered with the rest of the record as a whole, including consideration of Plaintiff's mental health care records (Tr. 24-26), mental status in physical examinations and therapy (Tr. 27), self-reporting and subjective complaints (Tr. 27), reported activities of daily living (Tr. 28), and work history. (Tr. 28.) In sum, the ALJ "balance[ed] these [medical] opinions and their minor differences with the rest of the record, without affording more weight to any one source." *Jacob P.*, 2021 WL 352416, at *4. The Court finds that the ALJ did not adopt any opinion of Dr. Roman's by finding her opinion "largely persuasive;" that he properly

---

[3] Specifically, the ALJ reduced Plaintiff's RFC to reflect issues with his knees and concluded that Plaintiff has mild limitations in adapting and managing himself. (Tr. 28.)

explained his findings regarding each opinion's persuasiveness in conjunction with the remainder of the record; and that under these circumstances the ALJ's determination was supported by substantial evidence in the record as a whole. *See Meyers*, 721 F.3d at 527.

## C. Reliance on VE Testimony

Plaintiff finally argues that the ALJ improperly relied on the testimony of the VE at step five because the VE's expert testimony conflicted with the DOT and exceeded Plaintiff's RFC as determined by the ALJ. Here, the Court agrees.

In making disability determinations, the Social Security Administration relies "primarily on the DOT (including its companion publication, the [Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO")]) for information about the requirements of work in the national economy." *Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, SSR 00-4p, 2000 WL 1898704, at *2 (Soc. Sec. Admin. Dec. 4, 2000) [hereinafter SSR 00-4p]; *see* 20 C.F.R. §§ 404.1566(d), 416.996(d).

When determining whether a claimant is disabled, the ALJ may use a VE to assist with whether a claimant's work skills can be used in other work and the specific occupations in which they can be used. 20 C.F.R. §§ 404.1566(e), 416.966(e). Occupational evidence provided by a VE

> generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between [VE] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict

> before relying on the [VE] evidence to support a determination
> or decision about whether the claimant is disabled.

SSR 00-4p, 2000 WL 1898704, at *2. "[T]he ALJ has an affirmative responsibility to ask

about any possible conflict between VE evidence and the DOT, and its companion

publication (the SCO), on the requirements of a job or occupation before relying on VE

evidence to support a determination of not disabled." *Kemp ex rel. Kemp v. Colvin*, 743

F.3d 630, 633 (8th Cir. 2014) (quotation and footnote omitted).

> If there is an "apparent unresolved conflict" between VE
> testimony and the DOT, the ALJ must "elicit a reasonable
> explanation for the conflict" and "resolve the conflict by
> determining if the explanation given [by the expert] provides a
> basis for relying on the [VE] testimony rather than on the DOT
> information." The ALJ is not absolved of this duty merely
> because the VE responds "yes" when asked if her testimony is
> consistent with the DOT.

*Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014) (quoting SSR 00-4p, 2000 WL

1898704, at *2-4). Absent adequate rebuttal, VE "testimony that conflicts with the DOT

'does not constitute substantial evidence upon which the Commissioner may rely to meet

the burden of proving the existence of other jobs in the economy a claimant can perform.'"

*Moore*, 769 F.3d at 990 (quoting *Kemp*, 743 F.3d at 632); *see Stanton v. Comm'r, Soc. Sec.

Admin.*, 899 F.3d 555, 558 (8th Cir. 2018) ("Whether the [VE's] testimony is substantial

evidence in support of the ALJ's decision thus depends on whether the expert's testimony

appears to conflict with the [DOT], and if so, whether the ALJ resolved the conflict.").

The DOT "provides 'standardized occupational information' by listing the

functional requirements for a number of jobs available in the national economy." *Stanton*,

899 F.3d at 558 (quoting 1 *Dictionary of Occupational Titles*, at xv (4th rev. ed. 1991)

[hereinafter DOT]).  It "gives the approximate maximum requirements for each position." *Jones v. Chater*, 72 F.3d 81, 82 (8th Cir. 1995).  In this case, the VE stated that an individual with the hypothetical limitations proposed by the ALJ could serve as a hand packager, product assembler, and electronics worker.  (Tr. 144.)   The DOT classifies these jobs at an SVP level of 2 and a general educational development ("GED") reasoning level of 2. DOT §§ 920.587-018, 706.687-010, 726.687-010.

Plaintiff argues that the jobs identified by the VE exceed the limitations in Plaintiff's RFC because the limitations presented in the hypothetical are more consistent with jobs with an SVP level of 1 as opposed to an SVP level of 2.  (Pl.'s Mem. in Supp. at 23.)  A job's SVP level is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."   DOT app. C, *available at* https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC.   An SVP level of 2 equates with a training time of "[a]nything beyond short demonstration up to and including 1 month."  *Id.*  Conversely, an SVP level of 1 equates with a training time of "[s]hort demonstration only."  *Id.*

The Commissioner responds that because both SVP 1 and SVP 2-level jobs qualify as unskilled work, either type of job is consistent with the hypothetical and RFC. (Comm'r's Mem. in Supp. at 16, ECF No. 23.)  Unskilled work is defined as

> work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time . . . . [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs.

20 C.F.R. §§ 404.1568(a), 416.968(a).

Plaintiff focuses on the fact that the ALJ's hypothetical included the mental limitation that the individual "would be limited to . . . tasks that can be learned with a short demonstration or very short written or verbal description." (*See* Pl.'s Mem. in Supp. at 23; Tr. 144.) He argues that, by its very definition, SVP 2-level jobs consist of tasks and duties that require more than a short demonstration. (Pl.'s Mem. in Supp. at 23.)

The SVP level of the jobs chosen by the VE appear to exceed the limitations in the hypothetical posed by the ALJ at the hearing and later determined to be Plaintiff's RFC. And, the record indicates that the ALJ did not resolve this particular conflict between the VE's evidence and the DOT. To be sure, the ALJ did ask follow-up questions of the VE regarding limitations in the hypothetical. (Tr. 145-46.) These questions, however, focused on "routine, repetitive tasks and few changes to the assignments." (*Id.*) They did not address an apparent unresolved conflict between the limitation that Plaintiff would be limited to "tasks that can be learned with a short demonstration or very short verbal description" and SVP level 2, which equates with a training time of "[a]nything beyond short demonstration up to and including 1 month." And, while the VE did mention that someone performing the work of an electronics worker could "be learned by demonstration," this did not resolve the conflict.

The Commissioner's argument regarding unskilled work does not respond to Plaintiff's argument that the SVP level of the jobs identified by the VE exceeds the hypothetical posed by the ALJ and his RFC. *Cf. Lilja v. Berryhill*, No. 16-cv-540 (TNL),

2017 WL 1183977, at *29 (D. Minn. Mar. 29, 2017).  The limitations identified by the ALJ's hypothetical are most consistent with the requirements of an SVP level of 1.  The jobs identified by the VE all had an SVP level of 2, thereby exceeding the hypothetical and Plaintiff's RFC as determined by the ALJ.  And, because the conflict between the VE's testimony and the DOT was not resolved, the ALJ erred by relying on the VE's testimony at step five and the ALJ's decision that there were other jobs available that Plaintiff could perform is not supported by substantial evidence.  *Stanton*, 899 F.3d at 558; *Moore*, 769 F.3d at 989-90; *accord Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 366 (8th Cir. 2007) ("An ALJ cannot rely on expert testimony that conflicts with the job classifications in the Dictionary of Occupational Titles unless there is evidence in the record to rebut those classifications.") (quotation omitted).

The Court will therefore recommend that the ALJ's decision at the fifth step be reversed and that this case be remanded for further proceedings.[4]  It further recommends that on remand,  the ALJ obtain additional VE testimony to address whether the jobs of hand packager, product assembler, and electronics worker, or any other jobs existing in the national economy, can be performed within the limitations of the hypothetical and Plaintiff's RFC, including that the job would be "limited to tasks that can be learned with a short demonstration or very short written or verbal description."  *See Lilja*, 2017 WL 1183977, at *30 (writing that on remand the conflict could be explained through VE

---

[4] Plaintiff also argues that the jobs identified by the VE exceed the limitations in the hypothetical and Plaintiff's RFC because the limitations presented in the ALJ's hypothetical are more consistent with jobs with a GED reasoning level of 1 as opposed to a reasoning level of 2.   Because the Court has already determined that the ALJ erred by relying on the VE's testimony in one respect, it need not consider whether there was an additional unresolved conflict between the VE's testimony and the hypothetical.

testimony showing that the jobs originally listed by the VE are of the type the plaintiff could perform or, in the alternative, the VE could identify other jobs with a different reasoning-development level).

## V.   RECOMMENDATION

Based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 20) be **GRANTED IN PART** and **DENIED IN PART**.

2. The Commissioner's Motion for Summary Judgment (ECF No. 22) be **GRANTED IN PART** and **DENIED IN PART**.

3. The Commissioner's decision be **AFFIRMED** as to steps one through four and **VACATED** as to step five.

4. The matter be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Date: January  31 , 2022                              *s/Tony N. Leung*
                                                      Tony N. Leung
                                                      United States Magistrate Judge
                                                      District of Minnesota

                                                      *Chase D. C. v. Kijakazi*
                                                      Case No. 20-cv-1292 (ADM/TNL)

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).